E-FILED
Tuesday, 24 September, 2024  03:43:20 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| BRENDA J. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-4190-SLD-JEH |
| | ) | |
| DAVID L. VANCIL, JR., HEIDI A. | ) | |
| BENSON, WILLIAM E. PONCIN, ERIC G. | ) | |
| ICENOGLE, DENNIS G. WOODWORTH, | ) | |
| JAMES R. STANDARD, JEFF M. | ) | |
| O'BRIEN, RODNEY G. CLARK, JAMES | ) | |
| G. BABER, JERRY J. HOOKER, SANDRA | ) | |
| D. GALLANT-JONES, JOSEPH N. VAN | ) | |
| VOOREN, KIRK W. LAUDEMAN, | ) | |
| TALMADGE G. BRENNER, and JOHN C. | ) | |
| WOLLEYHAN, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

*Pro se* Plaintiff Brenda J. Brown, dissatisfied with how her state-court cases have gone thus far, seeks to bring her disputes to new turf—federal court.  She names fifteen defendants drawn from two related cases.  *See generally* Compl., ECF Nos. 1–1-3.[1]  Defendants can be divided into two overlapping categories: (1) attorneys and judges involved in her state-court divorce case ("Divorce Proceeding");[2] and (2) attorneys and judges involved in a state-court mandamus action she filed based upon the Divorce Proceeding ("Mandamus Proceeding").[3] Pending before the Court are: (1) Defendant Dennis G. Woodworth's Motion for Summary

---

[1] Citations to Brown's complaint use page numbers instead of paragraphs due to its inconsistent numbering.
[2] *See In re the Marriage of Brown*, 2020-D-36, Hancock County, Illinois,
https://www.judici.com/courts/cases/case_information.jsp?court=IL034015J&ocl=IL034015J,2020D36,IL034015JL2020D36P1 (last visited Sept. 24, 2024)
[3] *See Brown v. Vancil*, 2022-MR-37, Hancock County, Illinois,
https://www.judici.com/courts/cases/case_information.jsp?court=IL034015J&ocl=IL034015J,2022MR37,IL034015JL2022MR37P1 (last visited Sept. 24, 2024).

Judgment, ECF No. 30; (2) Defendant Joseph N. Van Vooren's Motion for Summary Judgment, ECF No. 32; (3) Defendant Kirk W. Laudeman's Motion to Dismiss Plaintiff's Complaint, ECF No. 50; (4) Defendants Judges David L. Vancil, Jr., Heidi A. Benson, William E. Poncin, James R. Standard, Rodney G. Clark, James G. Baber, Jerry Hooker, Talmadge Brenner, and John Wooleyhan (collectively "Judge Defendants") and Assistant Attorney General Sandra Gallant-Jones's Motion to Dismiss and Memorandum of Law in Support, ECF No. 46; and (5) Defendants Eric Icenogle and Jeff O'Brien's Joint Motion to Dismiss Plaintiff's Complaint, ECF No. 48.  For the reasons that follow, claims for money damages against Judge Defendants and Woodworth are DISMISSED WITH PREJUDICE, all claims for injunctive relief are DISMISSED WITHOUT PREJUDICE, and the remainder of the case is STAYED pending resolution of Brown's state court case.

## BACKGROUND[4]

Brown's complaint is long, chronologically inconsistent, and peppered with unsupported legal conclusions.  The Court recounts in detail only the alleged original defect in this series of lawsuits—her attorney negotiating with opposing counsel before a judge in his chambers—before broadly summarizing her other allegations and state-court filings.

Brown retained Woodworth in July 2020 to represent her in the Divorce Proceeding.  She alleges that Woodworth conspired with her soon-to-be-ex-husband's ("Respondent") counsel, Icenogle, to harm her interests and usurp the court's role when they reached certain agreements—for example, who would be responsible for paying for certain marital bills.  *E.g.*, Compl. 34–35 ("Void of jurisdiction or judicial power, Woodworth and Icenogle usurped the judicial power of the court, and adjudicated the Plaintiff's case themselves . . . .").  Brown wanted Woodworth to seek certain injunctive relief and to challenge the veracity and completeness of Respondent's discovery disclosures.  *See id.* at 35–37 (asserting that she

---

[4] On a motion to dismiss for failure to state a claim, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant]'s favor."  *Pierce v. Zoetis, Inc*., 818 F.3d 274, 277 (7th Cir. 2016).  Where a motion to dismiss challenges a court's jurisdiction, the "court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Penny v. Pelosi*, 538 F. Supp. 3d 850, 855 (C.D. Ill. 2021) (citing *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)), *aff'd*, No. 21-2039, 2021 WL 6102166 (7th Cir. Dec. 23, 2021).  At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  The summary judgment record is not drawn exclusively from the complaint but is instead shaped by the parties' statements of undisputed material fact and their compliance or lack thereof with the Court's Local Civil Rules.  *See* Civil LR 7.1(D).  These rules state that "[e]ach claim of disputed fact must be supported by evidentiary documentation referenced by specific page."  *Id.* 7.1(D)(2)(b)(2); *see also* Fed. R. Civ. P. 56.  Courts are entitled to require that *pro se* litigants adhere to local rules, despite the litigant's lack of legal counsel.  *E.g.*, *Penny v. Lincoln's Challenge Acad.*, 822 F. App'x 497, 500 (7th Cir. 2020).  Brown was given notice that her "response must set forth specific facts showing that there is a genuine issue of material fact for trial."  *E.g.*, R. 56 Not., ECF No. 34.  In response to Woodworth's motion for summary judgment, Brown fails to adhere to the procedure laid out in Local Civil Rule 7.1(D), instead rehashing her legal arguments.  *See generally* Brown's Statement Undisputed Facts, Resp. Woodworth Mot. Summ. J., ECF No. 69-1.  Brown failed to respond at all to Van Vooren's motion for summary judgment.  Therefore, the Court deems the material facts recited in both summary judgment motions to be undisputed, yet still views those facts in the light most favorable to Brown.  *See* Woodworth Mot. Summ. J. ¶¶ 2–8; Van Vooren Mot. Summ. J. ¶¶ 2–6.  Unless otherwise specified, the facts set forth in the background section are drawn from Brown's complaint and the undisputed summary judgment facts.

"advised Woodworth that Respondent stated that his Financial Affidavit was prepared by someone else . . . adding that he did not read the Financial Affidavit before he signed it").

On January 11, 2021, at a hearing in the Divorce Proceeding, Woodworth, Icenogle, and Judge Poncin discussed the Divorce Proceeding in Judge Poncin's chambers instead of open court.  Brown describes this hearing as rife with unethical and improper *ex parte* communications.  Woodworth emerged from chambers a handful of times to consult with her and give advice, such as advising her to withdraw certain petitions so that those petitions could be presented to a different judge, per local practice.  Brown asserts that Woodworth failed to withdraw a petition and that led to an unfavorable ruling, although Woodworth "insisted that the Petition for Payment of Marital Bills had not been ruled on and that he had withdrawn it." *Id.* at 38, 40.

On June 10, 2021, Brown filed a complaint about Woodworth with the Attorney Registration & Disciplinary Commission ("ARDC") regarding the January 11, 2021 hearing.  On June 25, 2021, Woodworth responded to Brown's allegations, providing his "entire legal file"[5] to Brown, including the handwritten notes which he made during the January 11, 2021 hearing. *Id.* at 40–41; *see also* June 25, 2021 Letter from ARDC to Brenda Brown, Resp. Woodworth Mot. Summ. J. Ex. H, ECF No. 79; Attorney Notes, Resp. Woodworth Mot. Summ. J. Ex. I, ECF No. 80.  She asserts that those notes constitute Woodworth's confession that Judge Poncin had not made a determination about who would be responsible for certain marital bills but instead Woodworth had conspired with Icenogle to fraudulently change Judge Poncin's order when they drafted a submission for the court's January 14, 2021 order and purportedly made her responsible for the marital bills. *Compare* Attorney Notes 2 (tabulating bills that Woodworth

---

[5] Brown asserts that this was a false statement because certain emails were not included in Woodworth's submission, and that Woodworth therefore engaged in "multiple lies of omission" with the ARDC.  Compl. 42–45.

wanted Respondent to pay), *with* Jan. 14, 2021 Order in Divorce Proceeding ¶ 3, Resp.

Woodworth Mot. Summ. J. Ex. J, ECF No. 81 (authorizing Brown "to pay marital bills from the

cash reserves that she is maintaining").

Brown argues that because Woodworth allegedly defrauded the court, Judge Poncin's

January 14, 2021 order was itself the product of fraud, and "[f]raud deprives a judge of subject

matter jurisdiction and vitiates the entire proceeding."  Compl. 47.  She takes issue with other

statements made by Woodworth, characterizing them as false and fraudulent as well, *e.g.*, *id.* at

48–49 (alleging that Woodworth lied to her about attorney's fees), and further argues Judge

Poncin exceeded his authority and thereby deprived himself of jurisdiction, *e.g.*, *id.* at 50

(arguing Judge Poncin unlawfully granted her exclusive possession of the marital home).  She

asserts that Woodworth failed to comply with the January 14, 2021 order's instruction that

Woodworth research an issue related to the State Employee Retirement System, thereby causing

her over two million dollars in damages.  *Id.* at 52; *see also* Jan. 14, 2021 Order in Divorce

Proceeding ¶ 5.

Brown's other allegations that she has been wronged by her experiences in state court

strike a similar chord: (1) judges ignored her evidence that Respondent was using "WORLD

REMIT, an international money transfer company" and refused to compel more fulsome

discovery that would reveal further evidence of "bribery, wire fraud and many other criminal

acts perpetrated by officers of the court," Compl. 56–57; *see also* Bank Records, Resp.

Woodworth Mot. Summ. J. Ex. F, ECF No. 96; (2) it is unfair that she had to attend case

management conferences while Respondent was allowed to send counsel to attend in his stead;

(3) attorneys deprived her of "due process and equal protection under the law" by opposing her

motions and interfering with the "judge's adjudicative responsibilities," Compl. 61; (4) the

judges' stated disagreements with her legal conclusions were false statements and therefore those judges engaged in fraud which vitiated the entire proceeding and rendered their orders void; (5) judges and attorneys violated their duties to report misconduct to the appropriate disciplinary bodies when they disagreed with Brown and concluded that they had not witnessed any reportable misconduct in her cases; and (6) judges "defrauded [Brown] of multiple default judgments" when they disagreed with her assertion that defendants had defaulted, *id.* at 74.

Brown began to avail herself of Illinois's procedures for substituting a judge. *See, e.g.*, 735 ILCS 5/2-1001(a)(2)(i) ("Each party shall be entitled to one substitution of judge without cause as a matter of right."). On May 19, 2021, Brown filed a "petition for substitution of judge" in the Divorce Proceeding. Compl. 53. Judge Poncin recused himself, and Woodworth withdrew from representing her that same day. This was the first in a long series of fights about whether any judge was sufficiently free from bias to preside over the Divorce Proceeding. Brown alleges that they were not sufficiently unbiased and instead violated her rights. For example, she alleges that Judge Benson, who replaced Judge Poncin, deprived her "of a hearing, a fair and impartial tribunal, full-disclosure discovery and equal protection under the law, to conceal the evidence of bribery, wire fraud, and other acts of criminal conduct perpetrated by officers of the court" when Judge Benson *sua sponte* struck a 94-page motion—excluding attachments—to compel discovery in the Divorce Proceeding. *Id.* at 55–56; *see also* Apr. 1, 2022 Order in Divorce Proceeding 1, Resp. Woodworth Mot. Summ. J. Ex. E, ECF No. 76 (describing Brown's motion to compel discovery as "unintelligible" and devoted to issues stemming from the January 11, 2021 hearing before Judge Poncin); *id.* at 3 (striking that motion *sua sponte*).[6] Brown filed a motion to replace Judge Benson, which was heard by then-Chief

---

[6] Judge Benson explained to Brown why she could not address Brown's litany of complaints about the January 14, 2021 hearing:

Judge Vancil.  According to Brown, Chief Judge Vancil falsely stated that "bias and allegations of criminal conduct are not reasons to grant a substitution of judge for cause," this false statement was "a fraud upon the court," "[f]raud vitiates everything," and therefore the Divorce Proceeding was again vitiated that day.  Compl. 58–59.  In subsequent motions, she argued that a judge was forbidden from reviewing motions or responses submitted by counsel regarding her filings which were intended to get a new presiding judge and that a judge could never hear a motion when that judge was the target of that motion.  *E.g.*, *id.* at 61–62, 77–78.

On September 29, 2022, Brown initiated the Mandamus Proceeding, filing a 133-page—excluding exhibits—complaint seeking injunctive relief and a writ of mandamus against Chief Judge Vancil, Judges Benson and Poncin, Icenogle, and Woodworth.  *See generally* Pet. Emergency App. Writ Mandamus Inj. Relief in Mandamus Proceeding, Icenogle & O'Brien's Joint Mot. Dismiss Ex. 1, ECF No. 49-1.  The judges were represented by Gallant-Jones, Woodworth was represented by Van Vooren, and Icenogle was represented by Laudeman.

On April 4, 2023, Brown filed a motion to add additional defendants to the Mandamus Proceeding, namely Judges Standard, Clark, and Baber, as well as an attorney, O'Brien.  Joinder New Defs., Resp. Woodworth Mot. Summ. J. Ex. S, ECF No. 88.  Brown alleged that Judge Clark was responsible for Judge Benson being assigned to the Divorce Proceeding; Judge

---

Knock it off with the attorney malpractice and the ARDC complaint and Judge Poncin.  I don't have the power to do anything about any of that.  I can't do it, so quit asking.  There is—as I indicated to you several times, temporary relief is always reviewable and modifiable.  I already modified the temporary relief from Judge Poncin.  I'm not the appellate court on Judge Poncin.  I am not vested with the authority to say he did anything wrong.  I wasn't there.  I can't say Mr. Icenogle or Mr. Woodworth did anything wrong.  Quit bringing it up.  I don't have the authority to do that.  You took it to the ARDC.  They found no wrongdoing.  Maybe they were wrong.  I don't know.  I'm not the ARDC.  But I can't punish them for that.

Apr. 1, 2022 Divorce Proceeding Case Mgmt. Conf. Tr. 4:12–5:2, Resp. Woodworth Mot. Summ. J. Ex. D, ECF No. 75.

Standard presided over the Divorce Proceeding after Judge Benson; Judge Baber had failed to disqualify Judge Standard for cause from the Divorce Proceeding; and O'Brien was Respondent's new attorney.  Weeks later, Brown subsequently filed an addendum to join more defendants: The attorneys opposing her in the Mandamus proceeding—Gallant-Jones, Van Vooren, and Laudeman—as well as Judge Hooker, who heard one of her many motions to substitute a judge presiding over one of her cases and denied her requests for a venue change and that a judge from another circuit be assigned to her case.  Her mandamus complaint was dismissed in a May 30, 2023 order authored by Judge Brenner.  Brown was given leave to file an amended complaint related to her allegations against Woodworth and Icenogle, but she was prohibited from refiling her claims against Chief Judge Vancil, Judge Benson, and Judge Poncin because those claims were barred by judicial immunity.  *See generally* May 30, 2023 Order in Mandamus Proceeding, Resp. Woodworth Mot. Summ. J. Ex. C, ECF No. 74.  Her amended complaint was docketed on June 14, 2023.  *See* Am. Compl. 42 U.S.C. § 1983 in Mandamus Proceeding, Woodworth Mot. Summ. J. Ex. B, ECF No. 31-2.

On August 15, 2023, she filed a new complaint against Judge Brenner, which was assigned to Judge Wooleyhan.  Shortly thereafter, Judge Wooleyhan concluded that her complaint against Judge Brenner was frivolous and therefore struck it.  Judge Wooleyhan also struck a petition addressed to Chief Judge Vancil regarding the alleged criminal enterprise operating in the Ninth Judicial Circuit.  Judge Wooleyhan's order stated that Brown did "not have the right to unreasonably harass and abuse other litigants, attorneys, and judges by repeatedly filing pleadings which have no factual basis, are frivolous in nature, and have no purpose other than to delay [the Divorce Proceeding]."  Sept. 6, 2023 Order in Mandamus Proceeding 1, Resp. Woodworth Mot. Summ. J. Ex. L, ECF No. 83.  Judge Wooleyhan struck

8

some of Brown's filings, and found that sanctions were appropriate and necessary because Brown: (1) had failed to reasonably inquire into the factual and legal basis underpinning her claims; (2) engaged in a pattern of bringing "unsupported allegations against a judge who made rulings with which she d[id] not agree"; and (3) repeatedly attempted to relitigate issues which had already been resolved. *Id.* at 2. Judge Wooleyhan enjoined her from engaging in this course of conduct, requiring "prior leave of court" to submit new filings related to the Divorce Proceeding or Mandamus Proceeding. *Id.* at 3. She was also ordered to pay the defendants' attorneys' fees and costs. *Id.*

Brown's amended complaint in the Mandamus Proceeding was dismissed with prejudice by Judge Brenner. *See* Sept. 25, 2023 Handwritten Order in Mandamus Proceeding, Resp. Woodworth Mot. Summ. J. Ex. A, ECF No. 72; Oct. 10, 2023 Order in Mandamus Proceeding, Resp. Woodworth Mot. Summ. J. Ex. B, ECF No. 73. Judge Brenner found that the amended complaint failed to state a cause of action and further found that the amended complaint was "filed without a good faith basis in fact or law" and "was filed for the purpose of harassing these Defendants and to frustrate the expeditious resolution of [the Divorce Proceeding]." Oct. 10, 2023 Order in Mandamus Proceeding 2. Judge Brenner also found that Brown had filed three additional pleadings without prior leave of court in defiance of the sanctions imposed by Judge Wooleyhan, and he struck those pleadings *sua sponte*. Judge Brenner subsequently awarded Woodworth, Icenogle, and O'Brien attorneys' fees. Nov. 1, 2023 Min. Order in Mandamus Proceeding; Nov. 2, 2023 Order in Mandamus Proceeding 3, Woodworth Aff. Ex. D, ECF No. 31-4. No notice of appeal was filed with respect to either the October 10, 2023 or November 2, 2023 orders.

Brown filed this case on October 30, 2023. *See* Compl. 1. She asserts claims under 42 U.S.C. § 1983 for Defendants' alleged violations of her Fourteenth Amendment rights. *Id.* at 11. She seeks injunctive relief "from the criminal enterprise operating in the Eighth and Ninth Judicial Circuits" in the form of having "her two cases moved to a proper court," as well as preventing Judges Standard and Brenner from presiding over her cases. *Id.* at 95. She also seeks relief from their orders, such as the sanctions restricting her filings and ordering her to pay attorneys' fees. She seeks further relief "from the unconstitutional 40 ILCS 5/1-119 Qualified Illinois Domestic Relations Order [("QILDRO")] of which not one Judge who presided over Plaintiff's case has taken the time to look into." *Id.* at 96. She asserts that the unconstitutionality of the QILDRO should be the basis of injunctive relief to prevent any judge from finalizing the Divorce Proceeding. She asks that the Court enter a default judgment for a permanent legal separation because Respondent has not had to attend case management conferences. She requests that the Court give her "full-disclosure discovery." *Id.* at 97. She seeks compensatory damages—$2.3 million due to the QILDRO issue,[7] $240,710 plus interest due to Judge Poncin's January 11, 2021 order which supposedly obligated her to pay the marital bills, $135,218 plus interest for maintenance payments of which she has been deprived, and another $237,300 plus interest for her time and labor in running her business because the January 11, 2021 order deprived her of maintenance payments. Finally, she also seeks punitive damages totaling $2,445,752.

## DISCUSSION

Defendants raise multiple grounds for dismissing Brown's federal complaint. Judge Defendants and Gallant-Jones assert that: (1) claims against Judges Poncin and Clark are barred

---

[7] The Court presumes that Brown's inclusion of an extra zero was a typo. *See* Compl. 96 ("Plaintiff is seeking not less than $ 2,300,0000.00 in the loss of her lifetime pension annuity . . . .").

by the statute of limitations, Judge Defendants Mot. Dismiss 4–5; (2) *Rooker-Feldman* deprives the Court of jurisdiction for the claims stemming from final state-court judgments, *id.* at 5–9; (3) *Younger* abstention deprives the Court of jurisdiction for the claims related to ongoing state-court proceedings, *id.* at 10–12; and (4) judicial immunity and prosecutorial immunity preclude the claims against Judge Defendants and Gallant-Jones respectively, *id.* at 12–14.  Woodworth seeks summary judgment based upon *res judicata*.  Woodworth Mot. Summ. J. ¶¶ 9–16.  Van Vooren seeks summary judgment because Brown has failed to show that he acted under color of law.  Van Vooren Mot. Summ. J. ¶¶ 7–18.  Woodworth and Van Vooren filed a notice which stated that they join the Judge Defendants' arguments regarding *Rooker-Feldman*, *Younger*, and the statute of limitations.  *See generally* Not. Adoption Arguments, ECF No. 56.  Icenogle and O'Brien seek dismissal of Brown's federal complaint because they did not act under color of state law, Mem. Supp. Icenogle & O'Brien's Joint Mot. Dismiss 7–9, ECF No. 49, and they join Judge Defendants' *Rooker-Feldman* and *Younger* arguments, as well as the statute of limitations argument with respect to claims against Icenogle, *id.* at 9–10.  Finally, Laudeman argues that Brown has failed to allege that he acted under color of law and joins the arguments regarding *Rooker-Feldman* and *Younger*.  Mem. Supp. Laudeman Mot. Dismiss 6–9, ECF No. 51.

### I.   Legal Standards

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis."  *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'"  *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[M]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action'" are not sufficient to satisfy the plausibility standard.  *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).  A court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint . . . ."  *Bultasa Buddhist Temple of Chi. v. Nielson*, 878 F.3d 570, 573 (7th Cir. 2017).  When resolving such a motion, the court "accept[s] as true all well-pleaded factual allegations and draw[s] reasonable inferences in favor of the plaintiffs."  *Id.*  The court may look beyond the complaint's jurisdictional allegations and view other evidence submitted by the parties to determine whether subject matter jurisdiction exists.  *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008).  "[A] plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met."  *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

Finally, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must construe the record in the light most favorable to the nonmovant, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes

and drawing all reasonable inferences in favor of [the nonmovant]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute is insufficient to defeat a motion for summary judgment," *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (quotation marks omitted), as "there must be evidence on which the jury could reasonably find for the [nonmovant]," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## II.   Analysis

The Court first addresses Judge Defendants' arguments that they enjoy absolute judicial immunity from Brown's claim for monetary damages against them. The Court then turns to the various abstention doctrines and principles implicated by her sweeping requests for injunctive relief. After concluding that abstention is warranted with respect to the injunctive relief, the Court addresses the claims for monetary damages asserted against attorneys involved in Brown's state-court proceedings. The bottom-line conclusion is that Brown must allow the Divorce Proceeding to run its course.

### A.  Monetary Damages Against Judge Defendants

Judge Defendants argue that Brown's claims against them are barred by judicial immunity. Judge Defs. Mot. Dismiss 12–13. Judges are protected from personal liability for their decisions from the bench and are immune from lawsuits that seek monetary damages based on those judicial decisions. *See, e.g.*, *Forrester v. White*, 484 U.S. 219, 226–27 (1988) ("If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering

13

decisions likely to provoke such suits."). "[A] judge will not be deprived of immunity even if the action was in error, was done maliciously, was in excess of his authority, and even if his exercise of authority is flawed by the commission of grave procedural errors." *Brokaw v. Mercer County*, 235 F.3d 1000, 1015 (7th Cir. 2000) (citation omitted). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

There are two exceptions to absolute judicial immunity. First, a judge is not entitled to absolute immunity for non-judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 360 (1978). "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i. e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i. e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 362. For example, employment decisions related to court personnel, such as a probation officer, may be non-judicial acts not entitled to absolute immunity. *Forrester*, 484 U.S. at 229–30. Second, "[a] judge does not enjoy immunity if he or she is acting in the 'clear absence of all jurisdiction.'" *Kowalski v. Boliker*, 893 F.3d 987, 997 (7th Cir. 2018) (quoting *Stump*, 435 U.S. at 357). Such clear absence is contrasted with an act "in 'excess of [the judge's] authority.'" *Id.* (alteration in original) (quoting *Stump*, 435 U.S. at 356). The judge in *Kowalski* acted in the clear absence of all jurisdiction when she attempted to interfere "in a case to which she was never assigned and over which she had no responsibility." *Id.* at 998.

Brown's claims for monetary damages against Judge Defendants are barred by absolute judicial immunity. First, the only basis for these claims are judicial acts. She complains about the denials of her motions, the granting of motions for sanctions against her, the manner in which hearings were held or not held, and a litany of allegedly grave procedural errors—all acts which

14

are judicial in their function and therefore may not be the basis for a suit for monetary damages. *See Stump*, 435 U.S. at 362; *Brokaw*, 235 F.3d at 1015. She dealt solely with Judge Defendants in their capacities as judges, not employers or private citizens. *See Forrester*, 484 U.S. at 229–30. Second, she complains about Judge Defendants' actions in their capacities as circuit court judges, and the Eighth and Ninth Judicial Circuits are courts of original, general subject-matter jurisdiction. *See* Ill. Const., art. VI, § 9. In other words, they had jurisdiction over both the Divorce Proceeding and Mandamus Proceeding. *See, e.g.*, *In re Marriage of Yelton*, 676 N.E.2d 993, 997 (Ill. App. Ct. 1997) ("[D]issolution proceedings are within the general jurisdiction of the circuit courts."); *Oliver v. Kuriakos-Ciesil*, 163 N.E.3d 1207, 1211 (Ill. App. Ct. 2020) (concluding that the circuit court had jurisdiction over a mandamus petition).

Brown's discursive arguments to the contrary—largely consisting of inaccurate quotations from a smattering of caselaw and secondary sources—mostly miss the mark. *E.g.*, Mem. Supp. Resp. Judge Defs. Mot. Dismiss 25–27, ECF No. 63-1. Yet she references the Supreme Court's decision in *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984), which "conclude[d] that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." The Court considers Brown's requested injunctive relief in the context of its abstention analysis, which varies based upon whether the claim at issue is based upon the Divorce Proceeding or Mandamus Proceeding. However, the Court need not delve into case-specific details to conclude that Brown's claims for monetary damages from Judge Defendants are barred by absolute judicial immunity and are therefore dismissed with prejudice. *See, e.g.*, *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 903–04 (N.D. Ill. 2016) (dismissing with prejudice a claim for monetary damages asserted against a defendant who was entitled to absolute judicial immunity), *aff'd*, 700 F. App'x 535 (7th Cir. 2017).

15

### B. Abstention

The conduct of which Brown complains relates exclusively to her state-court lawsuits, raising the specter of many abstention doctrines.  Yet the blend of both private and public actors, both legal and equitable relief sought, and both pending and final proceedings complicates the doctrinal picture.  Brown's *pro se* submissions present further complications—they are too long, confused, and legally unsound.  At a minimum, Brown may not use this Court to "in effect seek[] to take an appeal of" the underlying state-court decisions.  *See Lance v. Dennis*, 546 U.S. 459, 466 (2006).  In this section, the Court analyzes the following abstention doctrines: (1) the domestic relations exception to federal jurisdiction; (2) *Rooker-Feldman* abstention; (3) *Younger* abstention; and (4) the general abstention principles discussed in the Seventh Circuit's decision in *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021).

### 1. Domestic Relations Exception

The domestic relations exception "covers a 'narrow range of domestic relations issues involving the granting of divorce, decrees of alimony,' and child custody orders."  *Kowalski*, 893 F.3d at 995  (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 701–02 (1992)).  The exception applies to federal-question suits, *id.*, and as it is a matter of jurisdiction, the Court must raise it *sua sponte*, *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015); *Miller v. Rokita*, No. 3:22-CV-883 JD, 2023 WL 4491213, at *6 (N.D. Ind. July 12, 2023) (applying this principle to the domestic relations exception).  The exception is construed narrowly, focusing upon "the need to prevent federal courts from 'disturb[ing] or affect[ing] the possession of property in the custody of a state court.'"  *Kowalski*, 893 F.3d at 995 (quoting *Marshall v. Marshall*, 547 U.S. 293, 311 (2006)).  If a plaintiff's claims require a court to disturb a state court's adjudication of family-law matters, the exception applies.  *Id.* at 996.

16

Yet the exception "does not bar suits seeking damages against individuals who interfered with a plaintiff's rights in a tortious manner." *Miller*, 2023 WL 4491213, at *6 (citing *Kowalski*, 893 F.3d at 996).

Here, Brown requests three forms of relief that squarely implicate the domestic relations exception. First, she asks that the Court grant her "a default judgment for a permanent legal separation" from Respondent. Compl. 97. A judgment of legal separation is a remedy a plaintiff can seek under the Illinois Marriage and Dissolution of Marriage Act. *See* 750 ILCS 5/402. Entering such a judgment is plainly beyond the Court's jurisdiction. *Cf. Kowalski*, 893 F.3d at 996 (holding that the plaintiff's suit did not implicate the domestic relations except where he did "not seek to alter an *in rem* custody award or to undo a divorce decree"). Second, she requests "injunctive relief from the unconstitutional 40 ILCS 5/1-119" QILDRO entered in her case. Compl. 96. A QILDRO is "an Illinois court order that creates or recognizes the existence of an alternate payee's right to receive all or a portion of a member's accrued benefits in a retirement system" that is "is issued pursuant to" 40 ILCS 5/1-119 "and Section 503(b)(2) of the Illinois Marriage and Dissolution of Marriage Act." 40 ILCS 5/1-119(a)(6). It is not clear from the record what the QILDRO order in Brown's case says, but regardless, the Court cannot disturb an order that impacts Brown's right to payment in a divorce proceeding. Third, she seeks an injunction that would prevent any judge "from finalizing the Plaintiff's dissolution case due to the interpolated QILDRO which has caused 40 ILCS 5/1-119 Qualified Illinois Domestic Relations Order to be unconstitutional." Compl. 96. The Court cannot interfere with or prevent entry of a divorce decree. The Court lacks jurisdiction to grant these forms of requested relief, and therefore dismisses the requests without prejudice. *See, e.g.*, *Lauderdale-El v. Ind. Parole*

*Bd.*, 35 F.4th 572, 576 (7th Cir. 2022) ("Dismissals for lack of subject-matter jurisdiction are necessarily without prejudice . . . .").

### 2. *Rooker-Feldman* Abstention

*Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). All Defendants invoke *Rooker-Feldman* to argue that the Court is without jurisdiction to hear Brown's claims against them. *See, e.g.*, Judge Defendants Mot. Dismiss 5–9. The Seventh Circuit interprets *Exxon Mobil* to require that four elements be present for *Rooker-Feldman* to apply, with its own caselaw adding a fifth element: (1) "the federal plaintiff must have been a state-court loser"; (2) "the state-court judgment must have become final before the federal proceedings began"; (3) "the state-court judgment must have caused the alleged injury underlying the federal claim"; (4) "the claim must invite the federal district court to review and reject the state-court judgment"; and (5) the plaintiff must have had "a reasonable opportunity to raise her federal issues in the state courts." *See Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (en banc).

At first blush, Brown's Complaint seems like an ideal candidate for the application of *Rooker-Feldman*, at least with respect to any claims arising out of the Mandamus Proceeding—the Divorce Proceeding remains ongoing, so clearly *Rooker-Feldman* is inapplicable.[8] The paradigmatic example of relief which is forbidden by *Rooker-Feldman* arises when "a plaintiff

---

[8] *See In re the Marriage of Brown*, 2020-D-36, Hancock County, Illinois, https://www.judici.com/courts/cases/case_history.jsp?court=IL034015J&ocl=IL034015J,2020D36,IL034015JL2020 D36P1 (last visited Sept. 24, 2024).

extends the invitation to undo, reverse, or overturn the state court judgment." *See Gilbank*, 111 F.4th at 795 (Kirsch, J., concurring in part).[9]  Here, Brown explicitly requests that the Court grant her "relief from multiple void court orders issued by Judges[] Wooleyhan, Brenner, and Standard," Compl. 95, and wants relief from the sanctions imposed in orders issued by Judges Brenner and Wooleyhan, such as requiring her to pay her opponents' attorneys' fees, *id.* at 96. Some of Brown's other claims, while not explicitly seeking reversal of a state court judgment, could be considered to have been caused by a state court judgment.  For example, she complains that three attorneys in the Mandamus Proceeding violated her rights and acted under color of law when they opposed her attempts to substitute a presiding judge, engaged in *ex parte* communications with Judge Hooker, and perpetrated a fraud upon the state court by providing unspecified "fraudulent facts" when requesting an extension of time.  Compl. 26–28, 59, 62. Assuming these actions injured Brown, such injuries were caused by the orders in the Mandamus Proceeding which dismissed her amended complaint and imposed sanctions upon her because the allegedly improper motion practice, *ex parte* communications, and improper extension of time would have been harmless errors had she obtained a writ of mandamus directing that the Divorce Proceeding be conducted according to her preferences.  *See Gilbank*, 111 F.4th at 768 (holding that where a plaintiff claimed, in part, that the defendants violated her due process rights by failing to provide notice prior to a hearing, the alleged injuries were caused by the state court judgment because "the failure of notice would have been harmless if the . . . hearing had gone her way").

---

[9] Part I of Judge Kirsch's concurrence in part and dissent in part constitutes a majority opinion of the *en banc* Seventh Circuit.  *See Gilbank*, 111 F.4th at 760 ("A different majority of the court . . . joins Part I of Judge Kirsch's opinion, making that portion also an en banc majority opinion.").

But it appears that the Mandamus Proceeding was not *quite* final at the time, making *Rooker-Feldman* technically inapplicable to claims arising out of it. "State law determines the finality of a state judicial decision" for purposes of *Rooker-Feldman*. *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 400 (7th Cir. 2023) (quotation marks omitted). Under Illinois law, "[a] judgment or order is 'final' if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy." *Dubina v. Mesirow Realty Dev., Inc.*, 687 N.E.2d 871, 874 (Ill. 1997). Dismissal of a complaint with prejudice generally counts as a final order or judgment, "as it indicates that the plaintiff will not be allowed to amend his complaint, thereby terminating the litigation." *Fabian v. BGC Holdings, LP*, 24 N.E.3d 307, 311–12 (Ill. App. Ct. 2014). However, "[i]n determining whether an order that does not resolve a claim for fees constitutes a final, appealable order, courts have made a distinction between a claim for fees brought as part of the principal action and a claim made after the principal action has been decided." *Goral v. Kulys*, 21 N.E.3d 64, 73 (Ill. App. Ct. 2014) (quotation marks omitted). A proceeding for attorneys' fees imposed under Illinois Supreme Court Rule 137 is "within and a part of the underlying civil action" which "must be resolved before the action becomes appealable." *In re Est. of Kunsch*, 794 N.E.2d 1059, 1064 (Ill. App. Ct. 2003).

Judge Wooleyhan's order imposing sanctions on Brown invoked Illinois Supreme Court Rule 137. Sept. 6, 2023 Order in Mandamus Proceeding 2–3 ("As a further sanction against the plaintiff pursuant to Supreme Court Rule 137, plaintiff is ordered to pay the reasonable attorney fee and costs of counsel for the defendants incurred in defending their clients against the filings by plaintiff herein . . . ."). Attorneys' fees were not awarded in the Mandamus Proceeding until November 1, 2023 at the earliest—two days before Brown filed her federal complaint. *See* Nov. 1, 2023 Min. Order in Mandamus Proceeding; Nov. 2, 2023 Order in Mandamus Proceeding;

20

Compl. 1.  No party analyzes whether Judge Brenner's October 10, 2023 order dismissing

Brown's amended complaint with prejudice but reserving the issue of the amount of attorneys'

fees, *see* Oct. 10, 2023 Order in Mandamus Proceeding, effectively ended the case, *cf. Bauer v.

Koester*, 951 F.3d 863, 867 (7th Cir. 2020) (finding that an order was "effectively final" for

purposes of *Rooker-Feldman* despite the at-issue order being unappealable under state law).  The

Supreme Court has emphasized that *Rooker-Feldman* occupies "narrow ground," *Exxon Mobil*,

544 U.S. at 284, and this case appears to be an imperfect candidate for its application because

Brown reached the federal courthouse just before the Mandamus Proceeding was finalized, *cf.

Stewart v. JPMorgan Chase Bank, N.A.*, No. 23-cv-3731, 2024 WL 554281, at *10 (N.D. Ill.

Feb. 12, 2024) (noting that there is not "much difference between a state court loser and a state

court soon-to-be loser" but still finding that *Rooker-Feldman* did not apply to the instant case).

### 3. *Younger* Abstention

"*Younger v. Harris*, [401 U.S. 37 (1971)], and its progeny espouse a strong federal policy

against federal-court interference with pending state judicial proceedings absent extraordinary

circumstances."  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431

(1982).  All Defendants argue that the Court is without jurisdiction to hear Brown's claims

against them as they are barred by *Younger* abstention.  *E.g.*, Judge Defs. Mot. Dismiss 10–12.

*Younger* abstention is applicable only to certain state-court proceedings, namely "state criminal

proceeding[s]," "particular state civil proceedings that are akin to criminal prosecutions," or

proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts."

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013); *see also Smith & Wesson Brands,

Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 890 (3d Cir. 2022) ("[F]ederal courts expanded *Younger*

and abstained too frequently, so the Supreme Court reined in that expansion." (citing *Jacobs*, 571

U.S. at 81–82)).  If a state-court proceeding falls within one of those categories, then *Younger*

abstention—which is rooted in federalism concerns and respect for a state-court system's ability

to hear and adjudicate cases—requires a court to abstain from hearing claims that would interfere

with the proceeding when three conditions are satisfied: "(1) the judicial or judicial in nature

state proceedings must be on-going; (2) the proceedings must implicate important state interests;

and (3) there must be an adequate opportunity in the state court proceeding to raise constitutional

challenges."  *Tr. & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir. 1994).  But even if

the three conditions are established, a court should decline to abstain where there are

extraordinary circumstances, such as "bad faith, harassment, or a patently invalid state statute."

*Jacobs*, 571 U.S. at 77.

Here, a threshold issue prevents applying *Younger* to this case: no Defendant has pointed

the Court to any authority holding that a divorce proceeding or a mandamus proceeding are one

of the three types of proceedings *Younger* applies to under *Jacobs*.  Judge Defendants point to

*Parejko v. Dunn County Circuit Court*, 209 F. App'x 545, 546 (7th Cir. 2006), in support of their

argument that domestic relations litigation implicates significant state interests.  Judge Defs.

Mot. Dismiss 10.   In *Parejko*, the Seventh Circuit collected caselaw establishing that "federal

courts have long recognized that domestic relations litigation—from marriage to divorce—is an

area of significant state concern from which the federal judiciary should generally abstain under

*Younger*."  *Parejko*, 209 F. App'x at 546.  But this case is both unpublished and was decided

before the Supreme Court in *Jacobs* clearly limited *Younger*'s scope.  Judge Defendants do not

analyze whether the Divorce Proceeding implicates "a state's interest in enforcing orders and

judgments of its courts," such that it would fit within one of the three categories of cases

identified in *Jacobs*.  *See Woodard*, 997 F.3d at 722.  They do point to a post-*Jacobs* case, *Doe v.*

*Lindell*, No. 22-1666, 2023 WL 196467, at *2 (7th Cir. Jan. 17, 2023), which they assert is "strikingly similar" to this case, Judge Defs. Mot Dismiss 11–12.  There, the plaintiff sued her ex-husband and other individuals "involved in her state-court divorce and custody proceedings," alleging under 42 U.S.C. §§ 1983 and 1985 that "the defendants conspired with the state-court judge to limit her parental rights."  *Lindell*, 2023 WL 196467, at *1–2.  There are obvious similarities between *Lindell* and this case, but one key distinguishing feature is that the plaintiff in *Lindell* filed a petition for a contempt order against the defendants based on their unlawful conspiracy, and such contempt petitions fell within "one of the three types of proceedings in which *Younger* applies."  *Id.* at *2–3 (citing *Juidice v. Vail*, 430 U.S. 327, 335 (1977)).  It is less clear in this case whether some aspect of the Divorce Proceeding neatly matches one of those three types of proceedings.

### 4.   General Abstention Principles

Thus far, the Court has concluded that: (1) claims for monetary damages asserted against Judge Defendants must be dismissed with prejudice based upon judicial immunity; (2) the domestic relations exception precludes the Court from exercising jurisdiction over Brown's request that this Court adjudicate her family-law issues but that exception does not affect the majority of her other requests; (3) *Rooker-Feldman* is probably an imperfect fit for claims stemming from the finalized Mandamus Proceeding due to unbriefed issues of Illinois law; and (4) *Younger* abstention is a similarly problematic fit for claims stemming from the ongoing Divorce Proceeding as that proceeding does not neatly fit the categories of cases identified in *Jacobs*.  In other words, the gravamen of Brown's case does not belong in federal court, but the narrow and technical doctrines used to weed out impermissible claims are not up to the task.

The Seventh Circuit confronted a similar dilemma in *Woodard*.  There, the plaintiff filed a 42 U.S.C. § 1983 suit on his own behalf and behalf of his children after his then-wife successfully sought a court order suspending his parenting time, "alleging violations of their First and Fourteenth Amendment rights and claiming that [Illinois Department of Children and Family Services] employees' conduct set off a series of events culminating in a state court order infringing on his and his kids' right to familial association."  *Woodard*, 997 F.3d at 717.  The Seventh Circuit found that the plaintiff was "probably right" that "none of the abstention doctrines—if examined and applied in isolated fashion—appl[ied] to his claims."  *Id.* at 722.  It noted that the plaintiff's case did not "fit[] exactly" with the three types of cases covered by *Younger* abstention, and that *Rooker-Feldman* abstention and the domestic-relations exceptions were not exactly on point as well.  *Id.* at 722–23.  Nevertheless, the Seventh Circuit found that abstention was warranted because the plaintiff's complaint sought to "compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute," and thereby disregard the "underlying principles of equity, comity, and federalism foundational to our federal constitutional structure" which motivate the various abstention doctrines.  *Id.* at 722.  The plaintiff's "complaint ma[de] plain" that the plaintiff's goal was "to receive a favorable federal constitutional ruling that c[ould] be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings."  *Id.* at 723.  Because granting the injunctive relief sought by the plaintiff could give him "an offensive tool to take to state court to challenge that judge's orders," the "federal court[] need[ed] to stay on the sidelines."  *Id.*

The same considerations that motivated the Seventh Circuit in *Woodard* apply with equal if not greater force in this case.  Based on conclusory assertions of denials of due process and

equal protection, Brown seeks a ruling from this Court to "have her two cases moved to a proper court," wipe out "multiple void court orders," undo the imposition of sanctions, prevent the judge who is currently presiding over the Divorce Proceeding—Judge Standard—"from presiding over [her] case," order the turnover of "full-disclosure discovery," and prevent any judge who previously refused her discovery requests from presiding over her case. *See* Compl. 95–97. She goes even farther than the plaintiff in *Woodard* in that she asks that the Court directly effectuate her requests instead of merely giving her a ruling which she could herself in the Divorce Proceeding. Even if the technical parameters of *Rooker-Feldman* and *Younger* are not satisfied, the policies of equity, comity, and federalism underpinning those doctrines' commands are obviously implicated. Brown failed to appeal in her Mandamus Proceeding and instead asks this Court to essentially act as a reviewing court. *Cf. Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 & n.22 (1975) (holding that the district court should not have "entertained" an action "seeking pre-appeal interference with a state judicial proceeding" and that even if his time to appeal had passed before the district court had issued its permanent injunction, the plaintiff could "not avoid the standards of Younger by simply failing to comply with the procedures of perfecting its appeal"). And she directly asks the Court to meddle in the still ongoing Divorce Proceeding.. As adjudicating Brown's sweeping requests for injunctive relief would require this Court to overstep its proper role in our federalist system, the Court must abstain. *See Woodard*, 997 F.3d at 724; *see also Jenkins v. McHaney*, No. 22-cv-2128-DWD, 2023 WL 3320147, at *7 (S.D. Ill. May 9, 2023) (applying *Woodard* as an additional basis to abstain from plaintiff's section 1983 which asked the court to review the "constitutionality of the presiding judge's decisions and actions," find certain state-court decisions to be void, and "enjoin the state court proceedings"); *Doe v. Lake County*, No. 21-cv-3262, 2022 WL 874651, at *7 (N.D. Ill. Mar. 23,

25

2022) (holding that "[e]ven if *Younger* [were not] a perfect fit, under [*Woodard*] abstention remains the appropriate course"), *aff'd sub nom. Doe v. Lindell*, No. 22-1666, 2023 WL 196467 (7th Cir. Jan. 17, 2023); *Bush v. Carr*, No. 20 C 6634, 2021 WL 4552555, at *1 (N.D. Ill. Oct. 5, 2021) ("[A]bstention surely is warranted here, where Bush sues Judge Carr himself and asks this court to directly decide the constitutionality of the judge's rulings and actions [in a parental rights case].").

It is not clear whether the bad faith and harassment exceptions to *Younger* apply to this nebulous *Woodward*-style abstention, but assuming they do, Brown fails to show that her state cases have been conducted in bad faith or to harass or retaliate against her. A plaintiff "must allege specific facts to support her inferences of bad faith, bias, and retaliation." *Crenshaw v. Sup. Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999). And Brown's allegations of bias are conclusory, amounting to pointing out that various judges ruled against her on various issues. But mere reliance on judicial rulings, at least here, cannot suffice to prove bias. *See Lindell*, 2023 WL 196467, at *3. Finding no extraordinary circumstances warrant declining to abstain, Brown's requests for injunctive relief are dismissed without prejudice. *See Lauderdale-El*, 35 F.4th at 576.

Brown's requests for compensatory damages from the attorneys are another matter. If her claims for compensatory damages would interfere with the ongoing state proceedings, the Court must abstain from hearing them as well. *See Woodard*, 997 F.3d at 724. The only non-Judge Defendants Brown arguably seeks compensatory damages from are Woodworth and Icenogle. The only requests she makes for compensatory damages (other than those related to the QILDRO order, which the Court has already dismissed) arise out of Judge Poncin's January 14, 2021 order. *See* Compl. 97 (seeking reimbursement of "$240,710.00 plus interest at the

highest legal rate" "for payment of marital bills plaintiff has been forced to pay after officers of the court changed the language of the court's decision," which is a reference to Judge Poncin's January 14, 2021 order which she alleges Woodworth and Icenogle fraudulently altered); *id.* at 98 (seeking "reimbursement for the fraud perpetrated upon the court when Woodworth, Icenogle and Poncin deprived the Plaintiff of $ 3,927 per month that she was rightly awarded by the Court," again referring to that same January 14, 2021 order); *id.* (seeking "compensatory damages to compensate the Plaintiff for the criminal conduct of Poncin, Woodworth and Icenogle in changing the language of the Court's decision" based upon the value of her time and labor in running her bed and breakfast business as well punitive damages, calculated as four times the amount of compensatory damages she seeks).  As any claims for injunctive relief against them are dismissed under abstention principles and Brown seeks no other relief from them, Van Vooren, Laudeman, O'Brien, and Gallant Jones are dismissed from this suit without prejudice.

The Court reiterates that Brown's pleadings are long and often conclusory.  As best the Court can tell, Brown claims that Woodworth and Icenogle violated her due process and equal protection rights under the Fourteenth Amendment in the following ways: participating in a hearing with Judge Poncin in Judge Poncin's chambers, Compl. 17 (both Woodworth and Icenogle); tampering with Judge Poncin's January 14, 2021 order to make her liable for marital bills that she was not supposed to be liable for, *id.* at 18–19 (both Woodworth and Icenogle); withholding discovery from Brown, *id.* (Icenogle only); filing an "unlawful petition for exclusive possession of the marital residence," *id.* at 19 (Woodworth only); allowing the state court to consider "a fraudulent and un-filed Financial Affidavit to be used during" a January 11, 2021 hearing, *id.* (Woodworth only).  Presumably, these claims would interfere with the ongoing

Divorce Proceeding because a finding that Brown's procedural due process rights were violated, for example, would undermine the state's ability to finally resolve the Divorce Proceeding.  *Cf. Woodard*, 997 F.3d at 724 ("As for Edwin's request for compensatory damages, he would have to first establish a constitutional violation of his right to familial association, and he could then use that judgment to interfere with ongoing state court proceedings."); *Majors v. Engelbrecht*, 149 F.3d 709, 714 (7th Cir. 1998) ("[A] federal damages suit, although not interfering with the state proceeding to the same degree as an injunction, could beat the state action to judgment and either undermine or preclude the State's consideration of some issues." (citations omitted)). Thus, abstention from these claims would typically be warranted, achieved either by dismissing the claims without prejudice or staying them pending resolution of the state case.  *Cf. Green v. Benden*, 281 F.3d 661, 667 (7th Cir. 2002).

But the Court finds that abstention from the claim against Woodworth is unnecessary because it is clearly barred by the statute of limitations.[10]  *See* Not. Adoption Arguments 2–3. "The limitations period for § 1983 claims is based in state law, and the statute of limitations for § 1983 actions in Illinois is two years."  *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) (noting that federal law looks to state law for the relevant statute of limitations for section 1983 claims).  "The date at which the claim accrues and thus starts the running of the limitations period is a matter of federal law, and

---

[10]  The Court perceives no jurisdictional bar to dismissing this claim on the merits as barred by the statute of limitations.  The case is clearly within the Court's federal question jurisdiction as Brown complains of federal constitutional violations.  *See* 28 U.S.C. § 1331.  And the Court's understanding is that a stay of damages claims under *Younger* essentially acts as a retention of jurisdiction over the case so it can resume once there is no chance resolution of the claim would interfere with the state proceeding; staying the case allows the court to comply with its "virtually unflagging obligation[] to exercise [its] jurisdiction."  *Cf. Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (quotation marks omitted).  Moreover, the often-stated reason for staying a money damages claim that falls within *Younger* rather than dismissing it without prejudice is "to avoid losing the plaintiff's claim to the statute of limitations without adjudicating it."  *Majors*, 149 F.3d at 714.  Where the claim is within the Court's subject matter jurisdiction and clearly barred by the statute of limitations, the Court sees no reason to stay it.  The Court would simply make the same decision once the Divorce Proceeding was finalized.

generally occurs when a plaintiff knows the fact and the cause of an injury." *O'Gorman*, 777 F.3d at 889. "If a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *Id.*

Here, Brown asserts that she learned of the fact and cause of the injury which she attributes to Woodworth on June 25, 2021, when she received the letter from the ARDC. Compl. 41 ("It was not until Plaintiff received a copy of Woodworth's 6/25/21 response to the ARDC regarding her complaint that she learned of the criminal conduct perpetrated by the three officers of the court, upon the court, and upon the plaintiff, in the seizure and deprivation of Plaintiff's property."). Woodworth withdrew from representing her on May 19, 2021, and she does not allege that Woodworth harmed her after June 25, 2021. She filed her complaint in this case on October 30, 2023, more than two years after June 25, 2021. Therefore, by her own allegations, her claim against Woodworth is barred by the applicable statute of limitations. *See O'Gorman*, 777 F.3d at 889.

Brown's arguments to the contrary are unpersuasive. She asserts that federal law, not state law, governs the characterization of a section 1983 claim for statute of limitations purposes and that state-law statutes of limitations must give way to federal law if they are inconsistent with federal law. Mem. Supp. Resp. Icenogle & O'Brien's Joint Mot. Dismiss 25–26, ECF No. 61-1 (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)); *see also Wilson*, 471 U.S. at 269 ("[S]tate law shall only apply 'so far as the same is not inconsistent with' federal law." (quoting 42 U.S.C. § 1988)). In part, the Court agrees—section 1983 is a federal cause of action, but to determine the statute of limitations for a section 1983 cause of action, "federal law looks to the law of the State in which the cause of action arose." *Wallace*, 549 U.S. at 387. However, Brown then argues that the two-year statute of limitations is inconsistent with federal law because "[f]raud

upon the court is not subject to any statute of limitations." Mem. Supp. Resp. Icenogle &
O'Brien's Joint Mot. Summ. J. 25–26. Brown's argument that her section 1983 claim is not
subject to any statute of limitations because she invokes the word "fraud" is unsupported by any
competent legal authority.

Though Icenogle also argues that the claim against him is barred by the statute of
limitations, *see* Mem. Supp. Icenogle & O'Brien's Joint Mot. Dismiss 9–10, he fails to mention
that one of Brown's allegations against him is that he participated in depriving her of discovery
in 2022, *see* Compl. 56–57. Accordingly, the Court will stay consideration of the claim against
Icenogle pending resolution of the Divorce Proceeding.

## CONCLUSION

Accordingly, Defendant Dennis G. Woodworth's Motion for Summary Judgment, ECF
No. 30, is MOOT. His request for dismissal of any claim against him under the statute of
limitations in his adoption of his co-Defendants' arguments, ECF No. 56, is GRANTED.
Defendant Joseph N. Van Vooren's Motion for Summary Judgment, ECF No. 32, is MOOT. His
request for abstention in his adoption of his co-Defendants' arguments, ECF No. 56, is
GRANTED. Any claim against Van Vooren for injunctive relief is DISMISSED WITHOUT
PREJUDICE. No claim for monetary damages was stated against Van Vooren. Defendant Kirk
W. Laudeman's Motion to Dismiss Plaintiff's Complaint, ECF No. 50, is GRANTED IN PART.
Any claim for injunctive relief against Laudeman is DISMISSED WITHOUT PREJUDICE. No
claim for monetary damages was stated against Laudeman. Defendants Judges David L. Vancil,
Heidi A. Benson, William E. Poncin, James R. Standard, Rodney G. Clark, James G. Baber,
Jerry Hooker, Talmadge Brenner, and John Wooleyhan ("Judge Defendants") and Assistant
Attorney General Sandra Gallant-Jones's Motion to Dismiss and Memorandum of Law in

Support, ECF No. 46, is GRANTED IN PART and DENIED IN PART.  All claims for monetary

damages against Judge Defendants are DISMISSED WITH PREJUDICE.  All claims for

injunctive relief against Judge Defendants and Gallant-Jones are DISMISSED WITHOUT

PREJUDICE.  No claim for monetary damages was stated against Gallant-Jones.  Defendants

Eric Icenogle and Jeff O'Brien's Joint Motion to Dismiss Plaintiff's Complaint, ECF No. 48, is

GRANTED IN PART and DENIED IN PART.  All claims for injunctive relief against Icenogle

and O'Brien are DISMISSED WITHOUT PREJUDICE.  No claim for monetary damages was

stated against O'Brien.  The only remaining claim is the claim for money damages against

Icenogle.  This case is STAYED pending the resolution of the Divorce Proceeding.  Plaintiff

Brenda J. Brown is DIRECTED to provide the Court with a status report by December 23, 2024.

Failure to provide such a status report will result in the dismissal of this case for failure to

prosecute.


        Entered this 24th day of September, 2024.


                                        s/ Sara Darrow
                        _____
                                SARA DARROW
                    CHIEF UNITED STATES DISTRICT JUDGE


31